IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| vs. | *   Case No. 24-mj-00364-GMH |
| | * |
| **DANE C. THOMPSON**, | * |
| Defendant | * |
| | * |

ooOoo

**DEFENDANT THOMPSON'S OPPOSITION TO GOVERNMENT'S
MOTION FOR PROTECTIVE ORDER**

Dane Thompson, by his undersigned counsel, opposes the Government's Motion for a Protective Order (ECF 10) in certain respects. The government motion identifies no basis for entry of a protective order and thus fails to meet its burden for entry of a protective order. The proposed Protective Order imposes a substantial burden on Mr. Thompson's rights and intrudes on the working relationship between the lawyer and the client.

The government does not specify which exact piece of evidence it seeks to protect. Rather, the Protective Order grants the government discretion to restrict the defense's use of large categories of evidence, such as "sources and methods law-enforcement officials have used and will continue to use, to investigate other criminal conduct related to the publicly filed charges" and "surveillance camera footage" from US Capitol police closed circuit cameras, which at this point in time have repeatedly been shown in multiple public forums. Particularly burdensome and intrusive of Mr. Thompson's rights to prepare a defense is the proposed designation and handling of the Capitol closed circuit ("CCTV") surveillance footage, which is designated as "highly sensitive." The procedures that attach to the "highly sensitive" materials limit Mr. Thompson's ability to review these

highly relevant materials, except under the supervision of defense counsel. The procedures thus impose an undue burden on Mr. Thompson's rights to due process and to assist in his own defense, without good cause.

The effect if not the goal of the protective order is to create a public information blackout that allows the government to monopolize and control the public narrative of the defendant's alleged participation in the events of January 6. The Protective Order grants the government discretion to designate most of the discovery as sensitive or highly sensitive. The government then boldly seeks to require the defense to pre-clear the documents it may file on the public docket ("no party shall disclose materials designated as Sensitive or Highly Sensitive in any public filing with the Court").

In sum, the broad proposed protective order disregards the defendant's right to a public trial and to assist in his own defense guaranteed by the Sixth Amendment and infringes public access rights protected by the First Amendment. *See Presley v. Georgia*, 558 U.S. 209, 213 (2010).

**I.      The Proposed Protective Order**

The Protective Order provides that "the burden of demonstrating the need for a protective order remains with the government at all times." Protective Order (ECF 10-1), p. 5, ¶ 9. Yet the government has not set forth any grounds for seeking a protective order. The Protective Order also provides that it "does not apply to materials that [a]re, or later become, part of the public court record, including materials that have been received in evidence in this or other public trials or hearings. . . ." *Id.*, ¶ 11(a). In practice, however, the government designates all CCTV surveillance footage as "highly sensitive" without regard to whether it has previously been received in evidence.[1]

---

[1] Examples of "highly sensitive" materials include "Surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds." Protective Order (ECF 10-1) at 1, §1(g).

2

**II.     Argument**

Federal Rule of Criminal Procedure 16(d) gives district courts the discretion to enter protective orders, "subject always to the Sixth Amendment's limitations." *United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015).

    **A.     Mr. Thompson Has a Sixth Amendment Right to a Public Trial and to Assist in His Own Defense.**

The Sixth Amendment guarantees a defendant the right to a public trial and to assist meaningfully in his own defense. *See McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) ("The [Sixth Amendment] . . . implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial."); *Dusky v. United States,* 362 U.S. 402 (1960) (defendant has a right to assist in his own defense). The proposed protective order infringes both those rights.[2]

    **B.     The Government Bears the Burden of Showing Good Cause to Enter a Protective Order**

The burden of showing "good cause" to enter a protective order is on the party seeking the order, and "among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of

---

[2] Mr. Thompson does not oppose the limitations referenced in ¶ 1 (ECF 10-1):

a.    Personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar unique identifying information;
. . .
c.    Information that may jeopardize witness security;
d.    Contact information for, photographs of, and private conversations with individuals that do not appear to be related to the criminal conduct in this case;
e.    Medical or mental health records;

information vital to national security[.]" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015). Here, the government has provided no justification for seeking a protective order. "Good cause requires a 'particularized, specific showing." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (cleaned up). "In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Id*

In other January 6 cases the government has argued that public disclosure of Capitol surveillance footage might result in the release of information regarding the vulnerabilities and security weaknesses of the U.S. Capitol. Yet, that justification is belied by the fact that the government itself has made footage from inside the Capitol available online in a request for public assistance in identifying suspects. *See, e.g.*, U.S. Capitol Violence, FBI, http://www.fbi.gov/wanted/capitol-violence. Capitol surveillance videos have also been made public multiple times in connection with the January 6 events, most notably in President Trump's second impeachment trial. *See, e.g.*, Video of how insurrection at Capitol unfolded, CNN, http://www.cnn.com/videos/politics/2021/02/10/security-footagecapitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn) (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34). Of course, the government has also included images pulled from Capitol CCTV video in briefs, in many of the filed Complaints and in filings seeking pretrial detention of defendants. *See, e.g., United States v. Anderson*, 21-cr-215, ECF No. 1-1 (D.D.C. 2021), at 3-8.

The Court should also consider *United States v. Morss*, 21-cr-40-TNM-5, in which the government did not oppose the release of Capitol surveillance footage to the press and public. On

July 19, noting that he had "confirmed that neither the government nor the defense objects to the release," Magistrate Judge Harvey ordered the government to make publicly available several video exhibits that the government submitted in connection with Defendant Morss's detention hearing, including four clips of video from Capitol surveillance cameras. Minute Order of June 19, 2021, United States v. Morss (ECF 91) (indicating Exhibits H, J, and N are clips of surveillance video); *see also* Ryan J. Reilly (@ryanjreilly), Twitter (July 20, 2021), https://twitter.com/ryanjreilly/status/1417540426169556993 (publishing the video clip designated as Exhibit L, which likewise appears to be Capitol surveillance footage).

The four Capitol surveillance video clips released in the Morss case depict activity in the tunnel leading to the Lower West Terrace doors to the U.S. Capitol. *See* Gov't's Mem. in Supp. of Pretrial Detention at 12-17, United States v. Morss (ECF 80). Those and similar video clips may be at issue in the instant case. The government's own public use of Capitol video underscores the reality that the layout of the Capitol is no state secret. Which is why the government has no objection to highly detailed verbal descriptions of the videos.

Indeed, at this point, nearly four years during which dozens if not hundreds of January 6 cases have been tried in this district, it is unclear whether any CCTV videos have not already been publicly displayed in open court, revealing the location of CCTV cameras, which completely undermines any argument that such information must be kept secret. Thus, at a minimum, before it designates CCTV footage "highly sensitive" the government should ascertain that the particular footage has not previously been introduced by it or by other defendants at trial. The default position should be that no CCTV footage can be designated "highly sensitive" unless the government affirms that it has not previously been made public; information which is particularly within its control as the sole

5

prosecuting authority for January 6 cases.

On balance therefore, the government has taken inconsistent and self-serving positions on the supposed need to restrict access to CCTV video footage; it makes such videos public when it suits its purposes but prohibits Mr. Thompson from fully accessing CCTV videos or disclosing them in the court filings. The reality is that if the government is providing discovery to the defense, the defense should be free to decide how to use that evidence including whether to file public pleadings with such evidence to contradict the government's accusations of the defendant. And, Mr. Thompson should have unfettered access to review such highly relevant materials. Absent some particularized justification that overrides Mr. Thompson's Sixth Amendment rights to a public trial and to assist in his own defense, the government should not control what evidence the public sees in this case, yet that is precisely the power that the proposed protective order grants to the government.

### C. The Protective Order Prejudices Mr. Thompson and Infringes on His Substantive Rights

The restriction the Protective Order imposes on Mr. Thompson's right to review the evidence against him infringes his substantive rights. Currently, under the terms of the Protective Order, Mr. Thompson cannot view materials designated "highly sensitive" without supervision by his counsel. *See* Protective Order, ¶6(a):

> **Additional Limitations on Dissemination**. Defense counsel may not provide a copy of Highly Sensitive materials to Defendant or permit Defendant to view such materials unsupervised by defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel. The parties agree that defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel, may supervise Defendant by allowing access to Highly Sensitive materials through a cloud-based delivery system that permits Defendant to view the materials but does not permit Defendant the ability to download; provided that, prior to doing so, defense counsel first provides notice to the United States and allow the United States to file an objection with the Court if no agreement is reached.

This provision prohibits Mr. Thompson from downloading "highly sensitive" footage to review at his convenience and on his schedule, even where he is depicted on the particular CCTV footage. There is no way around the *supervision* requirement because there is no way to offer Mr. Thompson "cloud-computing" options the Order requires in order for him to view the "highly sensitive" evidence relevant to his own case "without downloading it." There is no cloud-computing option that allows the large-sized videos that comprise the "highly sensitive" materials to be viewed without first downloading them.[3]

Consequently, no matter how relevant to his defense, Mr. Thompson will not be able to view the vast amount of video discovery, designated "highly sensitive" without the supervision of his counsel or her staff. In light of the large volume of discovery and hours of CCTV footage available in January 6 cases, such a procedure imposes costs and time constraints that are prohibitive. In January 6 cases, the government has advised that it plans to provide 15,000 hours of video footage, recordings from 1,600 electronic devices, the results of hundreds of searches of electronic communication providers, 210,000 public tips, 80,000 police reports and 93,000 attachments. *See, e.g.,* United States' Memorandum Regarding Status of Discovery as of February 9, 2022, Case No. 21-cr-28 (ECF 620) ("At this juncture, just over 24,000 files consisting of USCP closed circuit video ("CCV") footage, BWC from multiple law enforcement agencies, and USSS surveillance footage have been made available to the defense instance of evidence.com. For context, the files provided via

---

[3] Neither the government's own cloud-based file sharing system (USAFx), nor the system made available to defendants by the Administrative Office of the US Courts, nor any other commercially available system known to counsel allows sharing of such large video files without first downloading them.

evidence.com amount to over nine terabytes of information and would take 102 days to view.").[4]

The procedure which only allows *supervised* review of "highly sensitive" materials is particularly onerous for Mr. Thompson because he lives in the Pacific time zone, thus imposing an additional limitation on the time when his counsel can supervise his review of the "highly sensitive" materials. Moreover, adequate review of video evidence is a time-consuming process as it requires that the viewer slow down, rewind and review videos multiple times to capture relevant details particularly where the videos depict throngs of persons and multiple angles of events. Thus, supervised review of the "highly sensitive" videos becomes cost-prohibitive. Under this procedure, there is also insufficient time to effectively review the vast number of videos. But review by Mr. Thompson of these highly relevant materials is necessary to allow him to assist in his own defense and to confer with counsel about potentially relevant elements that counsel (not having been at the Capitol that day) may miss. The procedure for review of "highly sensitive" materials therefore infringes Mr. Thompson's right to assist in his own defense. *McKaskle*, 465 U.S. at 174.

Secondly, by granting onto itself the right to file video footage and other materials without any designation restrictions and otherwise disseminate to the public any such materials that the government believes advance its purposes, the government is effectively managing the negative publicity in a manner that threatens Mr. Thompson's right to an impartial jury. *Irvin v. Dowd*, 366

---

[4] *See, e.g.,* United States' Memorandum Regarding Status of Discovery as of February 9, 2022, Case No. 21-cr-28 (ECF 620) ("The United States files this memorandum for the purpose of describing the status of implementation of our Capitol Siege global discovery plan, *i.e.*, our plan for producing or making accessible to all defense teams voluminous data collected by the government in relation to the Capitol Siege investigation, so they may identify information they deem relevant.

U.S. 717, 726 (1961).[5]  All of these reasons account for why this Court recently ordered the government to remove a "highly sensitive" designation from Capitol CCTV video, over its objection. *United States v. Anderson*, 21-cr-215, ECF No. 37 (D.D.C. 2021). The video in that case was from a camera on the entrance to the Lower West Terrace of the Capitol Building on January 6.

Thirdly, four years into the continuous prosecution of January 6 cases and congressional hearings, that cameras are present throughout the Capitol Building, at various of its entrances, in the tunnel, and at other locations is not a state secret (if it ever was).  Indeed, the government's own public use of Capitol video underscores the reality that the layout of the Capitol and the location of CCTV cameras is no state secret. Moreover, while the Protective Order excludes from the "highly sensitive" designation materials previously entered into evidence, *see* ¶11(a), in practice the government designates all CCTV footage "highly sensitive" without regard to whether it has previously been introduced into evidence or otherwise made public in congressional hearings or on the FBI most-wanted website.  As the fact that a video has been previously introduced into evidence is particularly within the knowledge of the government, the sole prosecuting authority of January 6 cases, at a minimum the Protective Order should be modified to require the government to ascertain that CCTV footage has not been previously made public (in a trial or in one of the other ways the government has disseminated these materials publicly) before it can designate the material "highly

---

[5] The Sixth Amendment guarantees the right to a trial by a fair and impartial jury. The Supreme Court has found that the right was violated where, in the months preceding a defendant's trial, "a barrage of newspaper headlines, articles, cartoons and pictures was unleashed against him," which were "delivered regularly to approximately 95% of the dwellings" in the jury pool, the collective result of which was that the "continued adverse publicity caused a sustained excitement and fostered a strong prejudice" in the jury pool. Irvin v. Dowd, supra. The defendant in Irvin established this with 46 negative headlines. *Id*. at 725. In assessing potential impartial-jury prejudice from negative publicity, courts consider the source of that publicity and whether it derives from government action. *See, e.g., United States v. Bakker*, 925 F.2d 728, 733 (4th Cir. 1991).

sensitive."

## Conclusion

The government has failed to meet its burden that good cause exists at this point in time to enter the Protective Order. The designation of CCTV footage as "highly sensitive" is not justified four years into the prosecution of January 6 cases when most if not all of those videos have been introduced in court proceedings. The requirement for *supervised* review of "highly sensitive" materials prejudices Mr. Thompson's and unduly burdens his Sixth Amendment rights. Accordingly, Mr. Thompson opposes the entry of the proposed Protective Order.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 3rd day of January, 2025.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**